No. 2822

Second Circuit

---

ALEXANDER v. MAGNOLIA PIPE LINE COMPANY

---

(November 6, 1926. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Master and Servant —Par. 154, 159.

An employee, engaged in a hazardous occupation, who accidentally loses two pha-

langes of one of his little fingers in the course of his employment, is entitled to recover 65 per cent of the wages he was earning, up to a maximum of $20.00 per week, for a period of ten weeks, under Clause (d) of Subsection 1 of Section 8 of the Employers' Liability Act.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. E. P. Mills, Judge.

Action by Percy N. Alexander against Magnolia Pipe Line Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellant.

Pugh & Boatner, of Shreveport, attorneys for defendant, appellee.

## STATEMENT OF THE CASE

REYNOLDS, J. This is a suit to recover compensation at the rate of $20.00 per week during the period of plaintiff's disability, not exceeding 300 weeks.

Defendant, in answer, admitted that plaintiff was entitled to compensation at the rate of $20.00 per week for a period of ten weeks as for the loss of two phalanges of the little finger on plaintiff's left hand, and alleged that it had paid part of that compensation, and it tendered the balance unpaid up to $20.00 per week for a period of ten weeks in open court.

On these issues the case was tried and there was judgment for plaintiff for $20.00 per week for ten weeks, with legal interest, subject to a credit of $157.90 previously paid by defendant to plaintiff, and all costs.

Plaintiff appealed.

## OPINION

Plaintiff's counsel, in their brief, say that the only question really involved in the case is whether or not the fact that two phalanges of the little finger of plaintiff's left hand have been cut off makes this a specific injury and bars recovery for a minor injury; and further, that, in deciding the case, the lower court took, as the jurisprudence of this case, the case of Edgar A. Odom vs. Atlantic Oil Producing Co., now pending in the Supreme Court on a writ of certiorari granted from the decision of this court.

And counsel cite, in support of their contention in this case, the case of Quave vs. Lott-Batson Lumber Co., 151 La. 1052, the syllabus in which is as follows:

"1. Under Employers' Liability Act, as amended by Act No. 247 of 1920, Sec. 8, Subd. 1, Pars. (d), (e), where an employee lost three fingers and part of the metacarpal bones connecting them with the wrist, an allowance for the loss of the metacarpal bones in addition to the prescribed allowance for the loss of the fingers was proper; the total allowance not exceeding that prescribed for the loss of a hand.

"2. Under Employers' Liability Act, as amended by Act No. 247 of 1920, Sec. 8, Subd. 1, Par. (e), relative to cases where the usefulness of a member is permanently impaired, compensation was properly allowed for a finger made stiff and useless, though not actually severed or amputated."

The evidence in this case shows:

Plaintiff, Percy N. Alexander, testified, pages 5, 6, 7, 8, 9:

"Q. Mr. Alexander, you have lost two joints of your little finger on the left hand, is that not correct?

"A. Yes, sir; they have been taken off.

*  *  *  *  *

"Q. After you had been treated by Dr. Harmon for a while, did you report back to work?

"A. Yes, sir.

*  *  *  *

"Q. Did you tell Mr. Carnie that you were all right and ready to go back to work?

"A. I told him the doctor had released me and I was ready to go back to work.

*  *  *  *

"Q. And you reported back to duty?

"A. I reported back to duty, yes, sir.

*  *  *  *

"Q. And he did give you your job back?

"A. Yes, sir.

"Q. What kind of a job did you have?

"A. Driving a combination Fordson caterpillar.

"Q. You drove a tractor—that is exactly the same kind of work you were doing before you got hurt?

"A. Yes, sir, it was the same kind of work.

"Q. And you got exactly the same wages?

"A. Yes, sir, I guess—well, you say ——

"Q. All right, go ahead?

"A. No, sir, there wasn't any cut in the wages.

"Q. Then how long did you work driving that tractor?

"A. About four days; I think about four days.

*  *  *  *

"Q. Did you tell Mr. Carnie you had to quit because or on account of your hand?

"A. I told Mr. Carrie that I would have to quit—let me see—I told him I was getting off the job. I had to quit—I can go into details on that question if you want it.

"Q. Well, what I mean is this: Did you tell him you had to quit because you couldn't work on account of your hand—did you mention your hand?

"A. No, sir; I told him I wasn't able to hold down the job.

"Q. Didn't you tell him the reason you couldn't hold it down was because you were scared to hold it down?

"A. No, sir.

"Q. Well, what was the reason?

"A. Well, I told him I was scared off the job, yes, sir ——

"Q. You told him you couldn't hold the job down because you were scared to hold it down?

"A. Not exactly.

"Q. Didn't you just say that you were scared?

"A. I told him laughingly that I was scared off the job.

*  *  *  *

"Q. Didn't you tell him you were going to leave that tractor while you were alive; that you were afraid every minute that that tractor was going to kill you?

"A. I sure did.

"Q. You didn't say anything about your hand, did you?

"A. No, sir."

W. H. Carnie testified, pages 14, 15, 16:

"Q. What, if anything, did he say to you when he first came back?

"A. He told me that the doctor had released him and that he was ready to go to work.

*  *  *

"Q. And you put him to work April 2nd?

"A. Yes, sir.

"Q. What was the character of work you put him to doing?

"A. He drove a tractor for the first day and then took this caterpillar the second day.

"Q. What had he been doing before that?

"A. Driving a tractor.

"Q. You put him back on the same sort of job he was doing before?

"A. On the first day, yes, sir.

"Q. On the first day, what sort of tractor was he driving—one like he had been driving or a different kind?

"A. Yes, sir, it was the same identical tractor that he had got hurt on.

"Q. Did he get along all right?

"A. He got along as good as anybody could with a tractor in that country.

"Q. Did Mr. Alexander make any complaint to you at any time that he couldn't work because his hand was—the condition of it?

"A. None whatever.

"Q. Did you ever hear of that until this suit was brought?

"A. No, sir.

*  *  *  *

"Q. Was there any complaint by him that he couldn't do the work?

"A. No, sir.

"Q. What happened to cause him to discontinue that job?

"A. His tractor got mired, and he told me he speeded up on it as it went straight down, and when the back end went down he jumped off and left it in full gear, and it kept on until it covered itself; and that he got off of it in full motion and left it and permitted it to bury itself.

\* \* \* \*

"Q. What reason did he give?

"A. Well, he says, 'I am going to leave this tractor while I am alive'. He says, 'I hate to leave you. You are a good square man to work for and you have treated me like a gentleman, but I am afraid of it'. And I said, 'Well, if you are afraid of it, there isn't any use for you to work on it any longer'.

"Q. But he didn't complain of his hand?

"A. Not a bit.

\* \* \* \*

"Q. Then what did he come back for?

"A. He came back and asked me for a job. I asked him first what he was doing and he said he wasn't doing anything. And he asked me what I had and I didn't have any tractor work then and I told him I had some pipe line and ditch digging work, and he said that he would take on some of it, but he never did.

"Q. Did he take on either one of these jobs?

"A. No, sir.

"Q. Did he tell you why?

"A. Yes, he told me that he didn't want to do heavy work on account of a rupture.

"Q. Didn't mention anything about his hand, though?

"A. No, sir."

Doctor W. L. Hammon, the surgeon who removed the two phalanges of plaintiff's little finger, testified, pages 17, 18, 19, 20, 21:

"Q. Doctor, you are a qualified medical practitioner in the city of Shreveport?

"A. Yes, sir.

\* \* \* \*

"Q. Well, doctor, please state what physical impairments or deficiencies this man suffers with at that time insofar as his left hand is concerned?

"A. Well, about the only thing that I can say is that he has lost the two distal joints of his left little finger. He has a flesh scar on the outer side of the left hand about two or three inches long.

"Q. Was there any bony involvement?

"A. No, sir, no more than just these two joints.

"Q. Is there any reason that you know of why this man shouldn't be able to use his left hand as well as any other man who has lost two phalanges of his little finger?

"A. No, sir.

"Q. Doctor, this joint here, this stub of this little finger, is pretty stiff, isn't it?

"A. I don't think so. I think this joint here is good because there is no injury to this joint here. I just looked at it two or three days ago. This joint there is just as flexible as mine, I think.

"Q. What about the finger next to it? Have you examined that finger?

"A. Yes, sir.

"Q. Did you notice that it had full flexion?

"A. If it didn't, I don't know any reason why. This is just a scar from a flesh wound.

"Q. Doctor, the fact that when he lies down that arm goes to sleep, what does that indicate?

"A. I can't account for that; nor from his injury, because if the arm went to sleep it could not go to sleep from anything down there.

\* \* \* \*

"Q. From that wound that you see there and the scar, don't you think that could affect this second finger here?

"A. No, this wound over here couldn't affect this finger because the muscles both to this finger here come from up here; they come right down between the bones.

\* \* \* \*

"Q. Then this injury that manifests itself here wouldn't affect any part of the body other than the part you took off in any way?

"A. No—you mean affect the wrist?

"Q. Affect the hand up to the wrist?

"A. No, sir, you can take this finger back here clean off and it wouldn't affect any part of the body."

From all this evidence we are convinced that plaintiff has not suffered the impairment of a physical function and that he is only entitled to recover compensation for the loss of two phalanges of his little finger, entitling him to $20.00 per week for a period of ten weeks.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.